NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Respondent,*

*v.*

CHAD JUSTIN NORRIS, *Petitioner.*

No. 1 CA-CR 25-0327 PRPC

FILED 03-30-2026

Petition for Review from the Superior Court in Maricopa County
No. CR2012-149725-001
The Honorable Joseph C. Kreamer, Judge

**REVIEW GRANTED; RELIEF DENIED**

COUNSEL

Maricopa County Attorney's Office, Phoenix
By Jordan Anthony Smith
*Counsel for Respondent*

The Stavris Law Firm PLLC, Scottsdale
By Christopher Stavris
*Counsel for Petitioner*

_____

## MEMORANDUM DECISION

Presiding Judge Michael S. Catlett delivered the decision of the Court, in which Judge Angela K. Paton and Judge Jennifer M. Perkins joined.

_____

**C A T L E T T**, Judge:

¶1        Chad Justin Norris ("Norris") seeks review of the superior court's dismissal of his Rule 32 petition for post-conviction relief ("PCR"). Norris argues his trial and appellate counsel were constitutionally ineffective in various ways and the State engaged in prosecutorial misconduct.  Because the superior court did not abuse its discretion in dismissing Norris' petition, we grant review but deny relief.

## FACTS AND PROCEDURAL HISTORY

¶2        This Court previously summarized the facts of this case on direct appeal from Norris' conviction for killing a colleague. *State v. Norris*, 2018 WL 1281670 (Ariz. App. Mar. 13, 2018) (mem. decision).  In that appeal, Norris' counsel filed an *Anders* brief and Norris submitted a supplemental brief.  *Id.* at *1 ¶ 1.  After reviewing the record for fundamental error and finding none, we affirmed Norris' conviction for second-degree murder.  *Id.* at *2–3 ¶¶ 9, 11–12.

¶3        Later, Norris filed an amended PCR making multiple claims. The court dismissed Norris' PCR without holding an evidentiary hearing. What follows is a brief description of Norris' claims and the court's reasons for rejecting them.

¶4        Norris made multiple claims of ineffective assistance of counsel.  First, Norris claimed his trial counsel was ineffective for not challenging the grand jury proceedings.  Norris alleged that the second page of the transcript from his grand jury proceedings listed eleven grand jurors, then at the beginning of the proceedings "it was announced that the entire panel was present, less 5 grand jurors" and one of the "not-present grand jurors was CT."  Norris argued his trial counsel should have challenged the grand jury proceedings because "the record lack[ed] clarity" as to whether nine grand jurors concurred in the indictment.  A minute entry stated "[nine] members of the . . . Grand Jury" were present and the foreperson presented the indictment to the court.  The superior court did

not disagree with Norris' description of the transcript, but rejected his argument because the minute entry, which the court called "the official court record," stated that "all nine were present."

¶5        Norris also claimed trial counsel was ineffective during plea negotiations.  Before trial, the State indicated a willingness to offer a plea agreement in exchange for the location of the victim's body.  Norris declined the offer.  Norris included an affidavit with his PCR stating that his counsel was "supposed to propose an alternative" plea offer to the State but failed to do so.  The court rejected Norris' argument because he did not provide credible evidence that there was a viable possibility of an alternative plea agreement.

¶6        Next, Norris asserted he requested, but trial counsel did not provide, information about the number of bench trial murder cases, "acquittal rates" between bench and jury trials, and the "advantages and disadvantages" and "substantive and procedural differences" between bench and jury trials.  He also asserted that he would not have waived his right to a jury trial if he knew that a judge would be "presented with inadmissible evidence[.]"  Specifically, Norris claimed that a witness testified to preserving swabs and according to Norris "insinuate[d] . . . that defense counsel didn't do their job . . . in retesting[.]"  The same judge who conducted Norris' bench trial also reviewed Norris' PCR.  The court reminded Norris that he argued in his direct appeal that his colloquy with the court about waiving his jury trial rights was insufficient, which this court rejected.  *See Norris*, 2018 WL 1281670, at *2 ¶¶ 10–11.  The court also told Norris that it "knew to disregard" the comment Norris was concerned about.

¶7        Norris also claimed his appellate counsel was ineffective for failing to challenge the State's "judge shopping" because after Norris requested a bench trial the State asked, "[w]ell, Judge, can you keep this trial?"  The court responded that the trial dates would need to be determined before the assignment could be made.  At the next status conference, the judge informed the parties he would preside and confirmed that both the State and Norris agreed to have a bench trial.  The court rejected Norris' PCR argument because the State's question was "not judge shopping."

¶8        Norris claimed trial counsel was ineffective for stipulating that a DNA profile found on the victim's toothbrush belonged to the victim.  He further asserted that counsel only agreed to the stipulation because it was "just easier to do it this way[.]"  When rejecting Norris' PCR argument,

the court emphasized the overall strength of the DNA evidence and that Norris obtained his own expert.

¶9          Norris claimed trial counsel also should have moved to suppress a statement he made to police instead of arguing insufficient evidence.   At trial, the court heard testimony from a detective who interacted with Norris during the time a technician was obtaining his fingerprints at the police station.  The detective stated he chatted with Norris to help put him "at ease[.]"  The detective explained he did not read Norris his *Miranda* rights because he was not there to question Norris.  The detective said he knew Norris "had invoked his rights before, which is why [the detective] wasn't going to ask [Norris] any questions."  When the detective was walking out of the room, Norris asked, "[W]hat would you do if someone had threatened your wife, your kids and your family?"  Another detective and a technician testified that they also heard Norris ask that question.

¶10          Before either side presented any testimony, Norris' counsel moved to exclude his statement under *Miranda*.  But when later discussing the issue with the court, Norris' counsel said, "I haven't made a *Miranda* argument and it's not my position at this point that this is a coerced statement or forced statement in any manner.  It is my . . . argument there's not sufficient evidence to admit[.]"   Instead, counsel argued that the detective did not include the statement in the original report, but in a supplemental report multiple weeks later, and that the testimony from the corroborating witnesses did not match.   The court rejected counsel's argument because there was no basis to challenge the admissibility of the witness' testimony based only on credibility.  In his PCR, Norris claimed that failing to argue a *Miranda* violation demonstrated his counsel's "ineptitude and unpreparedness[.]"  The court disagreed, concluding that arguing a *Miranda* violation was a "losing argument" and counsel was not deficient for not making such an argument.

¶11          In his PCR, Norris also argued that because trial counsel did not move to suppress his statement under *Miranda*, he was "compelled to testify."  According to Norris, because the court admitted his spontaneous statement, he had to testify so the court could "reconsider its prior ruling[.]"  The court rejected Norris' argument, concluding his statement would have been admitted whether he testified or not.

¶12          Norris also contended his appellate counsel should have argued that the superior court violated his Confrontation Clause rights.  Before trial, the State requested leave to play a recording of a witness'

statements to a detective, because the witness now claimed an inability to "remember anything" due to a stroke. The State indicated the recording would include the witness' description of Norris' demeanor around the time of the murder, that Norris told the witness about threats from the victim, and that Norris admitted to doing "something bad." Norris' counsel objected, saying if the witness testified to not remembering, she should be considered unavailable to testify and unavailable for cross-examination. The court held oral argument and disagreed with Norris' counsel, saying her argument meant "any time a witness completely walks away and says I can't remember, then . . . it can't be used, and I don't think that's the right result[.]" The court indicated it would admit the recording under Arizona Rule of Evidence 803(5) if the court was convinced the witness "really can't remember."

¶13        At trial, the witness explained she had a stroke that caused memory loss and did not remember speaking to a detective. Relying on *State v. Real*, 214 Ariz. 232 (App. 2007), the court concluded that because the witness was present at trial, there was no Confrontation Clause issue because Norris could cross-examine her, even if she could not remember her prior statements. Later, Norris' counsel cross-examined the witness, but she testified she could not remember the answers to any of counsel's questions. A detective testified to recording his interview with the witness. The court accepted the exhibit "for demonstrative purposes only" and then listened to the recording. Responding to Norris' PCR argument, the court determined Norris' Confrontation Clause claim was precluded because Norris already raised it on appeal and it lacked merit.

¶14        Next, Norris argued in his PCR that trial counsel was ineffective for failing to properly object to certain testimony from three witnesses. First, Tyler Hardy ("Hardy") testified at trial that Norris told him years prior that the Mesa proving grounds would be an ideal place to hide a body because it would be difficult to find bodies "[o]ut in the desert." Because the victim's body was never located, the State theorized that Norris might have disposed of the victim's body in the desert. Before Hardy testified, Norris' counsel objected to the relevance of his "entire testimony." The State initially argued it was 404(b) evidence but later said it did "not plan on going into any previous bad acts[.]" The court determined the testimony was admissible but that it was "not particularly moved by a statement four years ago" alleging that Norris was "out there dumping bodies[.]" Later, the State also asked Hardy if he "remember[ed] describing [Norris] as bipolar?" and Hardy testified, "Absolutely." Norris' counsel did not object. In his PCR, Norris argued Hardy's testimony was impermissible 404(b) evidence and counsel was deficient for not objecting

to Hardy's statements. The court said the testimony "isn't 404, at all" and that the "bipolar comment was a throwaway. It moved me zip zero."

¶15        Second, Michael Havrelock ("Havrelock"), Norris' friend and prior business partner, testified that he visited Norris in jail. He described Norris' body language as follows:

> The best way I can describe it is - - you know, I have dogs. So if you go in your house and you know something's chewed up and, you know, you can tell which one did it. The head's down; they pop their eyes up at you. That's what I got the whole time I was there. So I just needed to see him to know the truth and I saw what I needed to see.

¶16        In his PCR, Norris argued trial counsel should have objected because Havrelock gave an "opinion on what he believed was the truth as to the ultimate issue in the case, . . . that [Norris] murdered the Victim." The court found that the testimony was not offered "for the truth of the matter asserted" but rather to show Haverlock's "observation" which the court gave "no weight[.]" Here is how the court put it: "So what if he went in and thought that Mr. Norris looked like he was guilty? To me, that didn't impact my verdict at all."

¶17        Third, Norris argued Detective Bermudez also opined on Norris' guilt by responding "Norris" when the State asked him, "[B]ased upon the investigation, . . . who was believed to be the cause of [Victim's] death and why?" The PCR court rejected this argument as well because it viewed the testimony as a "summar[y] [of] the evidence, which is typical for a case agent."

¶18        Norris then argued his counsel did not conduct a "reasonable pretrial investigation" into ballistics evidence, which allowed the State to submit "false evidence" that Norris' gun was the murder weapon. At trial, a criminologist for the State testified about examining five 9mm bullets obtained from the wall of the business where the State believed the murder occurred. The criminologist admitted to being "unable to identify or eliminate [the bullets] as being fired from a particular firearm[.]" The criminologist testified that all fourteen cartridge casings obtained from Norris' trailer during the investigation were fired from the same firearm. The State also provided testimony about obtaining a safe Norris used, which contained a loaded 9mm firearm, and that the caliber and brand of the bullets in that firearm matched the cartridge casings collected from Norris' trailer.

¶19         For his PCR, Norris hired a ballistics expert who concluded that, based on comparisons to test-fired cartridges, each cartridge casing from evidence was fired from the same type of gun Norris possessed.  But the ballistics expert was "unable to conclude" that the bullets in evidence were fired from Norris' actual gun, or even all from the same gun.  In response to Norris' argument, the court found that the new expert's opinion was "substantively the same" as the State's expert because neither could conclude the bullets were fired from Norris' gun.  So the PCR court concluded that trial counsel's performance was not deficient.

¶20         Finally, Norris claimed the State committed prosecutorial misconduct by "intentionally" misstating evidence during closing arguments.  Specifically, Norris asserted that the State improperly stated that five bullets "were consistent with having been fired" from a specific gun, and that the State "drew the conclusion" that it "was the murder weapon."  The court concluded this claim was precluded because Norris could have made it on direct appeal

¶21         Norris petitioned for review.  *See* Ariz. R. Crim. P. 32.16(a)(4). We grant review under A.R.S. § 13-4239(C).

## DISCUSSION

¶22         We review the superior court's denial of a PCR for an abuse of discretion.  *State v. Reed*, 252 Ariz. 236, 238 ¶ 6 (App. 2021).  "An abuse of discretion occurs if the PCR court makes an error of law or fails to adequately investigate the facts necessary to support its decision."  *State v. Pandeli*, 242 Ariz. 175, 180 ¶ 4 (2017).  Summary dismissal of a PCR is required when the petition presents no "material issue of fact or law that would entitle the defendant to relief[.]"  Ariz. R. Crim. P. 32.11(a).

## I.     Ineffective Assistance of Counsel

¶23         Norris argues the court erred in dismissing his ineffective assistance of counsel claims.  To prevail on such a claim, a petitioner must "demonstrate that counsel's conduct fell below an objective standard of reasonableness and that he was prejudiced thereby."  *State v. Bigger*, 251 Ariz. 402, 407 ¶ 8 (2021) (citing *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984)).  "Failure to satisfy either prong of the *Strickland* test is fatal to an ineffective assistance of counsel claim."  *State v. Bennett*, 213 Ariz. 562, 567 ¶ 21 (2006).  Under the first prong, "we must presume 'counsel's conduct falls within the wide range of reasonable professional assistance' that 'might be considered sound trial strategy.'"  *State v. Denz*, 232 Ariz. 441, 444 ¶ 7 (App. 2013) (quoting *Strickland*, 466 U.S. at 689).

### A. Grand Jury

**¶24** Norris argues the court erred by relying on a minute entry instead of the grand jury transcript to reject his claim that his trial counsel should have challenged whether the required number of grand jurors were present. "[A]t least [nine] grand jurors" must agree to an indictment "regardless of the number of grand jurors hearing a matter." Ariz. R. Crim. P. 12.6(a). "A discrepancy between a transcript and a minute entry may be resolved by reference to the transcript." *State v. Ruiz*, 239 Ariz. 379, 384 ¶ 16 n.4 (App. 2016) (citing *State v. Ovante*, 231 Ariz. 180, 188 ¶ 38 (2013)). But when a transcript is "ambiguous rather than in conflict with the minute entry . . . the minute entry clarifies[.]" *Id.* We have a "duty to interpret all parts of the record together, giving effect, if possible, to all and a deficiency in one place may be supplied by what appears in another." *State v. Rockerfeller*, 9 Ariz.App. 265, 267 (1969). The "origin or nature of the particular record" is something to consider "in deciding which part of the record is entitled to the greater credence[.]" *Id.*

**¶25** Crucially, Norris has not provided us with a full copy of the grand jury transcript, and one is not otherwise in the record. *See State v. Esaw*, 258 Ariz. 614, 621 ¶ 26 (App. 2024) ("We must presume, without a transcript, that the trial court's [actions were] satisfactory.") But the record does include an attachment to a filing Norris made in the superior court, with what appears to be the first two pages of a grand jury transcript. Those pages are dated September 28, 2012, the same date Norris referenced for the grand jury proceedings in his PCR. They reference a grand juror with the initials "CT." But unlike what Norris described in his PCR, the second page lists "Appearances" and "Grand Jurors Present." The list of "Grand Jurors Present" includes nine names, including an individual with the initials "CT." So what little we have from the grand jury transcript does not support Norris' claim.

**¶26** But even accepting Norris' description of the transcript, there is at most an ambiguity in the record. Norris has not established that less than nine jurors concurred in the indictment. *See Franzi v. Super. Ct.*, 139 Ariz. 556, 565 (1984) (without sufficient facts "we presume . . . the actions of the grand jury were lawful"). Even Norris argues only that "the record lack[ed] clarity[.]" But the court's minute entry about the supervening indictment provides clarity. That minute entry says that nine "members of the . . . Grand Jury" were present, and the foreperson presented the court with the indictment. The court did not err in relying on the minute entry to reject Norris' claim that trial counsel should have challenged the indictment.

## B. Plea Offer

**¶27** Norris next argues the court erred by rejecting his claim that trial counsel should have proposed an alternative plea offer to the State. "Although a defendant has the right to effective assistance of counsel in deciding whether . . . to accept a plea offer, defendants do not have a constitutional right to a plea bargain." *State v. Anderson*, 257 Ariz. 226, 232 ¶ 23 (2024) (cleaned up). "But once the State engages in plea bargaining, the defendant has a Sixth Amendment right to be adequately informed of the consequences before deciding whether to accept or reject the offer." *State v. Donald*, 198 Ariz. 406, 413 ¶ 14 (App. 2000). A defendant alleging ineffective assistance of counsel during plea negotiations is entitled to an evidentiary hearing only if he makes "more than a conclusory assertion that counsel failed to adequately communicate the plea offer or the consequences of conviction." *Id.* at ¶ 17. To make such a showing, the defendant must first establish a "concrete plea offer[.]" *State v. Jackson*, 209 Ariz. 13, 16–17, ¶¶ 7–11 (App. 2004); *see also State v. Vallejo*, 215 Ariz. 193, 195 ¶ 7 (App. 2007) (refusing, like *Jackson*, to extend *Donald* to "include a defense counsel's failure to investigate the speculative possibilities of a potential plea offer").

**¶28** Norris acknowledges the State indicated it was willing to offer him a plea agreement but only in exchange for Norris helping locate the victim's body. Norris declined the offer and maintained his innocence. To support his PCR, Norris submitted an affidavit stating that his counsel was "supposed to provide an alternative" plea offer to the State but did not. But neither his affidavit nor his PCR provide sufficient detail to show that the State might have accepted a plea that did not require Norris to reveal where the victim's body was, something Norris was unwilling to do. Because Norris did not provide evidence demonstrating even the possibility of a viable offer that both he and the State would have agreed to, he failed to establish that trial counsel's performance was deficient.

## C. Bench Trial

**¶29** Norris next argues the court erred in rejecting his claim that trial counsel was ineffective for not properly educating him about bench trials. A defendant "may waive the right to a trial by jury" but "the court must address the defendant personally, inform the defendant of the defendant's right to a jury trial, and determine that the defendant's waiver is knowing, voluntary, and intelligent." Ariz. R. Crim. P. 18.1(b)(1)–(2). "The pivotal consideration in determining the validity of a jury trial waiver is the requirement that the defendant understand that the facts of the case

will be determined by a judge and not a jury." *State v. Muhammad*, 253 Ariz. 371, 377 ¶ 23 (2022) (citation omitted).

¶30 The PCR court did not err for at least four reasons. First, Norris did not show that the data he allegedly requested about bench trials was readily available, and even if it was available, that not obtaining and providing that data was deficient performance.

¶31 Second, Norris ignores that the court advised him that "most cases go to a jury" and "by agreeing to a bench trial, you move back from a jury of eight persons to me, a single person, that would make that determination." The court further explained:

> Now, when I am conducting the bench trial, I take both roles, and so that means we will be having a discussion about what the law is, . . . what's admissible in evidence, the things that can come in, and then that evidence will be presented in court, and I will make a decision as to what happened, just one person. So you're giving up that right to have the jury make the determination.

¶32 Third, while the court may hear inadmissible evidence during a bench trial, that does not mean the judge's factfinding role transforms inadmissible evidence into admissible evidence or that the court will consider inadmissible evidence when rendering the verdict. To the contrary, we presume a judge knows the law and applies it. *State v. Williams*, 220 Ariz. 331, 334 ¶ 9 (App. 2008). But applying that presumption is unnecessary here because the court said that it knew at trial to disregard the "insinuat[ing]" comment Norris raised as an example of inadmissible evidence the court heard.

¶33 Finally, on direct appeal, Norris argued that his jury-trial waiver was not voluntary, knowing, or intelligent, and this court rejected that the court improperly secured Norris' waiver of a jury trial. *Norris*, 2018 WL 1281670, at *2 ¶¶ 10–11.

### D.     Judge Shopping

¶34 Norris argues the court erred because the State engaged in "judge shopping" and appellate counsel should have raised the issue on appeal. Norris asserts the State engaged in judge shopping by asking, "Well, Judge, can you keep this trial?" The superior court acknowledged that the State conditioned its agreement to a bench trial on a particular

judge "keeping" the case. But Norris does not identify how this constitutes "judge shopping."

¶35          In any event, because Norris did not object to the State's question at the time, his appellate counsel would have had to demonstrate that Norris was prejudiced and that the superior court committed fundamental error. *See State v. Escalante*, 245 Ariz. 135, 140 ¶ 12 (2018). Norris has not identified any record evidence supporting that the result of his trial would have changed if a different judge was randomly assigned. Plus, on direct appeal, this court independently reviewed the record for fundamental error and found none. *See Norris*, 2018 WL 1281670, at *2 ¶ 11.

### E.      Stipulation

¶36          Norris argues the court erred in dismissing his claim that trial counsel was ineffective for stipulating that a toothbrush contained the victim's DNA profile. Norris says trial counsel instead took the "easier" course of action. "When evaluating the reasonableness of counsel's strategic decisions, the foundational inquiry is the rationale for the decision." *Bigger*, 251 Ariz. at 408 ¶ 11. Counsel does not render deficient performance by choosing to take a less combative approach in some situations. *See State v. Allen*, 223 Ariz. 125, 127 ¶ 11 (2009) ("Parties routinely stipulate to easily proven facts, and courts encourage such stipulations[.]"). Norris retained a DNA expert who had access to the DNA evidence and could have testified if the DNA profile from the toothbrush did not match the victim's DNA. And a detective testified about obtaining the victim's toothbrush from the victim's residence. Tellingly, Norris does not dispute the DNA test results; in fact, he concedes the DNA on the toothbrush matched the DNA at the crime scene. Because Norris cannot now dispute the DNA results, we cannot see how counsel was deficient by stipulating that the victim's toothbrush contained the victim's DNA.

### F.      Spontaneous Statement

¶37          Norris next challenges the superior court's dismissal of his claim that trial counsel was ineffective in the way she challenged a statement he made to police during booking.

#### 1.    *Miranda*

¶38          Norris first argues counsel should have moved to preclude his statement as coerced under *Miranda*, instead of arguing there was insufficient evidence that he made the statement. A petitioner can demonstrate ineffective assistance of counsel by showing that counsel's

decision was "not tactical in nature but ... the result of 'ineptitude, inexperience or lack of preparation.'" *Denz*, 232 Ariz. at 444 ¶ 7 (quoting *State v. Goswick*, 142 Ariz. 582, 586 (1984)). But a petitioner must show more than just a "disagreement[]" because if counsel has "some reasoned basis," the petitioner's claim fails, "even if the tactics counsel adopts are unsuccessful." *Id.* (cleaned up).

¶39 Here, trial counsel initially moved to suppress Norris' statement under *Miranda* and on grounds that the State's evidence that Norris made the statement was too unreliable. The superior court held an evidentiary hearing to decide admissibility. After testimony from the State's witnesses, trial counsel narrowed her argument to focus only on reliability.

¶40 Counsel's choice to narrow the argument after hearing the pertinent testimony was a strategic decision that cannot support deficient performance. *See Strickland*, 466 U.S. at 690 ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable[.]"). The State's detective testified that Norris spontaneously asked him, "What would you do if someone had threatened your wife, your kids and your family." The detective testified that, in response to Norris, he said, "[T]hat's not something we can talk about right now. If you want to set up a free talk like we discussed, I would be more than happy to talk about that with you, but I said I'm not going to talk with you now because you already said you don't want to."

¶41 Considering that testimony, trial counsel had a reasoned basis for focusing on whether Norris ever made the statement, rather than on whether the police coerced it. Once the court found the State's evidence about the statement was sufficiently reliable to be admitted, the chances Norris would succeed on a *Miranda* claim were exceedingly slim. *See State v. Carter*, 145 Ariz. 101, 106 (1985) ([A]dmission of an accused's spontaneous, voluntary statement that is not made in response to police interrogation does not violate the defendant's *Miranda* rights."). Counsel was not deficient for forgoing a futile argument.

2.    Norris' Testimony

¶42 Norris also argues that because counsel did not move to suppress his statement, he was "forced to relinquish his right to remain silent and had to testify[.]" But Norris was not compelled to testify, he chose to testify to try to refute the State's evidence. In his PCR, Norris conceded he knew that by testifying "he would be subjecting himself to the

full litany of the State's examination[.]" And the court correctly concluded that Norris' statement would have been admissible regardless of when counsel moved to exclude it. Norris chose to testify, and he does not demonstrate that counsel's argument forced him to do so.

### G. Confrontation Clause

**¶43** Norris claimed his appellate counsel should have raised a Confrontation Clause argument because he could not effectively cross-examine a witness. The Confrontation Clause "'prohibits the introduction of testimonial statements by a nontestifying witness' unless the defendant had a prior opportunity to cross-examine the now-unavailable witness." *State v. Fordson*, 258 Ariz. 167, 171 ¶ 14 (App. 2024) (quoting *Ohio v. Clark*, 576 U.S. 237, 243 (2015)). Rule 803(5) allows a recorded recollection to be admitted about an issue "the witness once knew about but now cannot recall well enough to testify fully and accurately[.]" Ariz. R. Evid. 803(5).

**¶44** In *Real*, this court concluded there was no Confrontation Clause violation when an officer "had no memory of investigating," so he read from his police report, but the defendant was permitted to cross-examine him. 214 Ariz. at 233–34 ¶¶ 3–4, 7. Here, the witness at issue testified at trial and explained she had a stroke resulting in memory loss. The court then allowed the State to play a recording of the witness' police interview after a detective testified about interviewing and recording the witnesses' prior statements. Norris cross-examined the witness and the detective.

**¶45** "The Confrontation Clause does not guarantee that the resulting cross-examination will be effective." *Id.* at 235 ¶ 10. Because Norris was permitted to cross-examine the witness, there was no Confrontation Clause violation. Moreover, on direct appeal, this court independently reviewed the record and determined the superior court did not make any reversible error, and thus Norris' claim is precluded. *See Norris*, 2018 WL 1281670, at *2 ¶ 11.

### H. Witness Testimony

**¶46** Norris claimed trial counsel was ineffective for not objecting to testimony from Hardy, Havrelock, and Detective Bermudez.

#### 1. Hardy

**¶47** Norris argues trial counsel should have objected when Hardy testified about Norris' previous comment about disposing of a body at the

Mesa proving grounds because it was improper other acts evidence. Arizona Rule of Evidence 404(b) prohibits evidence of other acts or crimes if offered "to prove the character of a person in order to show action in conformity therewith." Ariz. R. Evid. 404(b)(1). But Rule 404(b)(2) allows other acts evidence to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Ariz. R. Evid. 404(b)(2).

¶48        Hardy did not testify about "other acts." *See State v. Connor*, 215 Ariz. 553, 563 ¶ 32 (App. 2007) ("Rule 404(b) only precludes evidence . . . to show the character of a defendant to prove disposition to acts of a particular type."). Hardy merely testified about a previous conversation with Norris. As the superior court concluded, the testimony "isn't 404, at all."

¶49        Norris also argues trial counsel should have objected when the State asked Hardy if he "remember[ed] describing [Norris] as bipolar" and Hardy responded, "Absolutely." Norris says the State's inquiry was "irrelevant and unduly prejudicial." The superior court disagreed, explaining that the "bipolar comment was a throwaway. It moved me zip zero."

¶50        Norris overlooks that trial counsel objected to the entirety of Hardy's testimony as irrelevant. Moreover, Hardy used the term "bipolar" in the colloquial sense; he was not making a medical diagnosis. And trial counsel also introduced evidence that Norris often jumped from one project to another and had been diagnosed with attention deficit disorder. Counsel used Norris' tendency to shift from one thing to another during closing to justify why Norris suddenly shifted the focus of renovations on the office to the break room where the State theorized the murder occurred. So counsel's decision not to object to Hardy's testimony was likely strategic; it was not deficient.

2.        Havrelock

¶51        Next, Norris argues trial counsel should have objected to Havrelock's testimony about Norris' demeanor when Havrelock visited him in jail. Norris contends Havrelock's testimony was inappropriate for a lay witness because it went to an ultimate fact (his guilt). A lay witness may testify to his opinion if it is limited to comments "rationally based on the witness's perception," "helpful to clearly understand the witness' testimony," and "not based on scientific, technical, or other specialized knowledge[.]" Ariz. R. Evid. 701. Havrelock explained Norris' demeanor

after seeing him in jail, which is different from opining on Norris' guilt or innocence. Even assuming Havrelock's testimony was improper, it did not prejudice Norris because the court expressly stated it gave the testimony "no weight[,]" and noted the testimony "didn't impact [the court's] verdict at all."

### 3. Detective Bermudez

¶52 Like Havrelock's testimony, Norris argues trial counsel should have objected to Detective Bermudez's testimony because he "opined to the ultimate issue." Detective Bermudez responded, "Norris," when asked, "[B]ased upon the investigation, . . . who was believed to be the cause of [Victim's] death and why?"

¶53 Viewing his testimony in context, Detective Bermudez explained the evidence police obtained in the case, how police ruled out other individuals based on that evidence, and why the State ultimately charged Norris with murdering the victim. There is nothing objectionable about him doing so. Furthermore, trial counsel cross-examined Detective Bermudez and Norris takes no issue with her performance there. Again, trial counsel was not deficient for failing to object to admissible testimony.

## I. Ballistics Evidence

¶54 Norris contends his counsel failed to "conduct a reasonable investigation" into ballistics evidence. Specifically, Norris asserts his expert would have provided testimony contradicting the State's attempt to show his gun was the murder weapon. "[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. But counsel need not pursue an investigation if it "would not yield useful information or is otherwise unnecessary in light of counsel's chosen trial strategy." *Denz*, 232 Ariz. at 445 ¶ 11.

¶55 The court found that the expert Norris retained for his PCR did not adequately contradict testimony from the State's expert at trial because neither was able to confirm Norris' gun matched the ballistics results on the fired bullets. We agree with the superior court.

¶56 Even if Norris' ballistics expert had testified at trial, it would not have furthered Norris' defense. *See id.* To the contrary, Norris' expert testimony may have bolstered the credibility of the State's expert witness because both made similar conclusions. Thus, Norris has not demonstrated that trial counsel's performance was deficient.

## II. Prosecutorial Misconduct

**¶57** Finally, Norris argues the State committed prosecutorial misconduct by "arguing and misstating evidence" that five bullets "were consistent with having been fired" from a specific gun. The PCR court concluded Norris cannot now raise this issue. We agree. A petitioner is precluded from post-conviction relief for an issue "finally adjudicated on the merits in an appeal[.]" Ariz. R. Crim. P. 32.2(a)(2). Following his sentencing, Norris filed a direct appeal and a supplemental brief. We "searched the entire record for reversible error" but "[found] none." *Norris*, 2018 WL 1281670, at \*2 ¶ 11. Thus, this argument is precluded.

## CONCLUSION

**¶58** Because the court did not abuse its discretion in denying Norris' PCR, we grant review but deny relief.



MATTHEW J. MARTIN • Clerk of the Court
**FILED**:            JR